**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| IN RE MUTUAL FUNDS INVESTMENT | : | |
| LITIGATION | : | |
| | : | **Civil No. 1:04:md-15864-CCB** |
| This document relates to: | : | |
| Strong sub-track | : | Brian Flynn v. Strong Capital Mgmt., Inc., |
| | : | et al., Civil No. 1:04-cv-949 |
| | : | |

...o0o...

**<u>ERISA OPINION</u>**

Included in this MDL proceeding involving alleged late trading and market timing in the mutual funds industry are suits against various defendants in eight fund families brought under the Employee Retirement Income Security Act ("ERISA").[1]  Generally, the plaintiffs claim that the value of their retirement accounts was adversely affected by the timing activities permitted in certain mutual funds and that the defendant Plan fiduciaries knew or should have known that the relevant funds were not a prudent investment.[2]  The defendants have filed omnibus and supplemental motions to dismiss, on which oral argument was heard September 21, 2005, before the three judges assigned to this litigation.  This opinion is issued in the Strong sub-track, but addresses many issues common to all sub-tracks.[3]

The named plaintiff in the lead case (No. 04-949) in the Strong sub-track is Brian Flynn. Flynn began employment with Strong Capital Management, Inc. ("SCM") on September 14,

---

[1] Suits are pending in seven sub-tracks: Alliance, Amvescap, Bank of America, Bank One, Janus and Marsh & McLennan, Putnam, and Strong.

[2] For a discussion of the timing and late trading activities and of the related investor class action and fund derivative lawsuits see the Investor Class Opinion and the Fund Derivative Opinion issued by Judge J. Frederick Motz on August 25, 2005 in the Janus sub-track.

[3] As with the opinions issued by Judge Motz in the Janus sub-track, other independent rulings will follow.

2001 and entered the Strong Capital Management, Inc. Profit Sharing and 401(k) Plan ("Strong Plan") that same day.  On January 1, 2002, the "Employer" for purposes of the Strong Plan became Strong Financial Corporation, and the name of the Plan was changed to the Strong Financial Corporation Profit Sharing and 401(k) Plan.  Flynn appears to have left Strong's employment on July 11, 2003, and at his direction the full amount of his account balance in the Plan was rolled over to an existing Strong IRA on July 13, 2004.

Flynn, who alleges that he "was a Strong employee, [and] is a participant in the Plan" (Am. Compl. § 18), seeks to represent a class of

> All persons who were participants in or beneficiaries of the Strong Plan at any time between October 30, 1998 and the present (the "Class Period") and whose accounts included investments in Strong Funds.

(*Id.* at ¶ 28).  He alleges that the Strong Plan consists primarily of 28 investment alternatives from the Strong family of mutual funds.  Named as defendants are Flynn's former employer SCM, the investment adviser for the Strong family of funds, and Richard S. Strong ("R. Strong"), Chairman of the Board of the Strong Funds.[4]  The complaint identifies SCM and R. Strong as named or *de facto* fiduciaries of the Strong Plan and alleges that they breached their fiduciary duties under ERISA § 404(a), 29 U.S.C. § 1104(a).  Asserting that illegal late trading and/or market timing were permitted in a number of the Strong mutual funds, and that the value of Plan participants' investments was thereby diluted, Flynn claims that the Plan fiduciaries knew or should have known that the funds were an imprudent investment, yet failed to take action to protect the interests of the Plan participants.  (Am. Compl. §§ 41-49 and Count One).

---

[4] The Strong Fund Director/Trustees Davis, Kritzik, Vogt, Malicky, and Greer were named as defendants but have been dismissed by stipulation filed March 22, 2005.

The plaintiffs also allege under ERISA § 404(a) a violation of the duty to monitor the Plan (Am. Compl., Count Three), and co-fiduciary liability under ERISA § 405.  (Am. Compl., Count Four).[5]

Flynn seeks, as relief, a declaration that the defendants have breached their fiduciary duties; an order compelling the Defendants "to make good to The Plan all losses to the Plan resulting from defendants' breaches of their fidiciary duties;" a constructive trust; "actual damages in the amount of any losses the Plan suffered, to be allocated among the Participants' individual accounts in proportion to the accounts' losses;" and other injunctive and equitable relief, costs, and attorneys' fees.  (Am. Compl., "Prayer for Relief".)[6]

The defendants raise several issues in their motions to dismiss under Fed.R.Civ.P. 12(b)(1) and 12(b)(6) including standing, adequacy of pleading, and the applicability of a "presumption of prudence."  These issues will be discussed in turn.

Plaintiffs have the burden of proving that subject matter jurisdiction exists.  *See Evans v. B.F. Perkins, Co.*, 166 F.3d 642, 647 (4th Cir. 1999).   In reviewing a Fed.Civ.R.P. 12(b)(1) motion, "the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment."  *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).  A court should grant a Rule 12(b)(1) motion "if the material

---

[5] Count Two alleges prohibited transactions in violation of ERISA § 406.  At oral argument, plaintiffs' counsel withdrew the prohibited transaction claims and also all misrepresentation claims.  (Tr. 9/21/05 at 42:22-43:3.)

[6] At oral argument, plaintiffs' counsel conceded that former employees would have difficulty demonstrating standing to seek prospective injunctive relief.  (Tr. 9/21/05 at 38:15-21).

jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Evans v. B.F. Perkins Co.*, 166 F.3d at 647.  When the jurisdictional facts are intertwined with questions of law, however, it may be appropriate to resolve the entire factual dispute at a later proceeding on the merits.  *See United States v. North Carolina*, 180 F.3d 574, 580-81 (4th Cir. 1999); *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982); *Bryant v. Clevelands, Inc*., 193 F.R.D. 486, 488 (E.D. Va. 2000).

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint; importantly, a Rule 12(b)(6) motion does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999) (internal quotation marks and alterations omitted).  When ruling on such a motion, the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).  Consequently, a motion to dismiss under Rule 12(b)(6) may be granted only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see also Edwards*, 178 F.3d at 244.  In addition, because the court is testing the legal sufficiency of the claims, the court is not bound by the plaintiff's legal conclusions.  *See*, *e.g.*, *Young v. City of Mount Ranier*, 238 F.3d 567, 577 (4th Cir. 2001) (noting that the "presence...of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6)" when the facts alleged do not support the legal conclusions); *Labram v. Havel*, 43 F.3d 918, 921 (4th Cir. 1995) (affirming Rule 12(b)(6) dismissal with prejudice because the plaintiff's alleged facts failed to support her conclusion that the defendant owed her

a fiduciary duty at common law).

In ruling on a motion to dismiss in an ERISA action, the court is not confined to the allegations in the complaint, but may review the plan documents referred to in the complaint and relied on by the plaintiff.  *Beddall v. Street Bank & Trust* Co., 137 F.3d 12, 17 (1st Cir. 1998); *In re USEC Sec. Litig.*, 190 F. Supp. 2d 808, 813 (D. Md. 2002) (noting that in a securities fraud action, "the Court is entitled to rely on public documents quoted by, relied upon, incorporated by reference or otherwise integral to the complaint, and such reliance does not convert such a motion into one for summary judgment").

Contrary to the defendants' assertions, ERISA does not impose a heightened pleading standard, such as the Fed.R.Civ.P. 9(b) particularity requirement for fraud claims, on the plaintiffs' ERISA claims for breach of fiduciary duties.  The basic notice pleading requirements of Fed.R.Civ.P. 8 apply to ERISA actions such as the one before the court.   *See*, *e.g.*, *Concha v. London*, 62 F.3d 1493, 1502-03 (9th Cir. 1995) (reviewing case law and holding that Rule 9(b) "is not applicable in cases in which the complaint alleges breaches of fiduciary duty under ERISA, and does not allege fraud or mistake"); *In re AEP ERISA Litig.*, 327 F. Supp. 2d 812, 822 (S.D. Ohio 2004) (noting that "courts...routinely apply only the general, liberal pleading standards of Rule 8 to ERISA claims," even when the ERISA claims are based on similar conduct underlying related securities fraud claims); *In re Enron Corp. Securities, Derivative & ERISA Litig.*, 284 F. Supp. 2d 511, 652 (S.D. Tex. 2003) (applying Rule 8 notice pleading standards to ERISA claims).  The complaint must contain sufficient factual allegations, however, as compared to mere legal conclusions, to state a claim properly under ERISA.  *See Custer v. Sweeney*, 89 F.3d 1156, 1163 (4th Cir. 1996) (affirming dismissal of ERISA complaint that

"lacked any specific factual allegations" to support the assertion that the defendant was a *de facto* fiduciary of the plan).

<u>Standing</u>

The first issue to be addressed is statutory standing.  A plan "participant" is authorized to bring suit under ERISA § 502(a)(2) and (3), 29 U.S.C. § 1132(a)(2) and (3).  Flynn, like most if not all of the named plaintiffs in other sub-tracks, is a former employee who has accepted a lump-sum pay-out (or rollover) of his vested benefits.  ERISA defines a "participant" as "any employee or former employee...who is or may become eligible to receive a benefit of any type from an employee benefit plan."  ERISA § 3(7), 29 U.S.C. § 1002(7).

The Supreme Court in *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101 (1989), held that a former employee can be a participant if either 1) she has "a reasonable expectation of returning to covered employment," or 2) she has a "colorable claim to vested benefits."  *Id*. at 117 (internal quotations omitted).  None of the plaintiffs allege they will be returning to covered employment with their former employers.  Thus, the issue centers on whether the plaintiffs, as former employees who have received a lump-sum payment of their ERISA benefits, retain a "colorable claim to vested benefits."  Such a "colorable claim," the Court explained, is a claim that the former employee will either 1) "prevail in a suit for benefits," or 2) fulfill the eligibility requirements for benefits at some point in the future.  *Id*. at 117-18.

The plaintiffs here argue that the defendants' breaches of fiduciary duty diminished the

value of the shares in the mutual fund families in which their retirement accounts were invested,[7]

(Am. Compl. ¶ 17), and thus they received less money than they were entitled to when they left

the Plans.  The Fourth Circuit has not adopted a categorical rule prohibiting former employees

who have accepted a lump-sum payment from suing as participants under ERISA § 502.  The

defendants argue that in *Stanton v. Gulf Oil Corp.*, 792 F.2d 432, 434-35 (4th Cir. 1986), the

Fourth Circuit rejected the "but for" exception stated in *Swinney v. General Motors Corp.*, 46

F.3d 512 (6th Cir. 1995), thus implying acceptance of the "general rule that a person who

terminates his right to belong to a plan cannot be a 'participant' in the plan." *Id.* at 518.  But that

argument reads *Stanton* too broadly.  *Stanton* merely rejected a claim by a former employee who

had received his benefits in full, but claimed he would have remained in employment had he

known about a new pension program implemented immediately after he left.  This new program

would not have covered him initially even if he had remained with the company.  792 F.2d at

432-35.

More closely analogous are the opinions in *Sommers Drug Stores Co. Employee Profit

Sharing Trust v. Corrigan*, 833 F.2d 345 (5th Cir. 1989), and *Rankin v. Rots*, 220 F.R.D. 511

(E.D. Mich. 2004).  In *Sommers*, the Fifth Circuit held the plaintiffs had standing, despite having

received their benefits, where their claim was "that the amount received was not the full amount

of vested benefits due under the terms of the profit sharing plan, but was less, because the

---

[7] In certain actions where the employer's company stock was an investment alternative, the plaintiffs allege the value of that stock was artificially inflated prior to the announcement of, e.g., the Spitzer and SEC investigations.  *See*, *e.g.*, Amvescap ERISA Compl. ¶ 43; Bank of America ERISA Compl. ¶ 49; Marsh & McLennan ERISA Compl. ¶ 47.

amount received for the shares was less than fair market value." 883 F.2d at 350.[8]  In *Rankin*,

the court held that former participants in a plan sponsored by Kmart had standing to sue over

alleged fiduciary breaches concerning the plan's continued inclusion of Kmart stock as an

investment option "at a time when Kmart was in serious decline and which resulted in significant

losses to the Plan." 220 F.R.D. at 514.  The former participants sued to recover their losses, and

the court stated that to find they had no standing "would permit Kmart to exclude potential class

members by simply paying them their vested benefits.  ERISA should not be interpreted to

circumvent a plaintiff's recovery in this manner." *Id.; see also Kuper v. Quantum Chem. Corp.*,

829 F. Supp. 918, 923 (S.D. Ohio 1993), *aff'd sub nom. Kuper v. Iovenko*, 66 F.3d 1447 (6th Cir.

1995).  While the defendants correctly note that employers generally cannot force their former

employees out of ERISA plans, the motivating principle in these cases is that employees should

not forfeit a cause of action under ERISA to recover what is rightfully theirs under their plan by

taking a pay-out of what they incorrectly believe is all that is owed to them at the time.  *See*

*Vartanian v. Monsanto Corp.*, 14 F.3d 697, 702 (1st Cir. 1994) ("To hold otherwise would imply

that when an employer breaches its fiduciary duty to an employee under ERISA, the employee

would have standing to sue only if the employee finds out all of the facts constituting the breach

prior to his receipt of retirement benefits.  Such a holding would enable an employer to defeat

the employee's right to sue for a breach of fiduciary duty by keeping his breach a well guarded

secret until the employee receives his benefits or, by distributing a lump sum and terminating

---

[8] The court in *Sommers* distinguished *Kuntz v. Reese*, 785 F.2d 1410 (9th Cir. 1986), because in *Kuntz*, although the defendants allegedly had lied about the amount of benefits, their actions had not changed the level of vested benefits to which the plaintiffs were entitled, and thus the suit was for damages rather than benefits.  883 F.2d at 349-50.

benefits before the employee can file suit.").

The defendants further argue that the plaintiffs fail to meet the statutory standing

requirements because, even if they claim a right to benefits rather than damages, the current

complaint is not one for vested benefits under ERISA § 502(a)(1)(B).  The language in

*Firestone*, however, is not limited to the present but explains that "[i]n order to establish that he

or she 'may become eligible' for benefits, a claimant must have a colorable claim that (1) he or

she will prevail in *a suit* for benefits, or that (2) eligibility requirements will be fulfilled *in the*

*future.*" 489 U.S. at 117-18 (emphasis added); *see also Astor v. Int'l Business Mach. Corp.*, 7

F.3d 533, 538 (6th Cir.1993) ("In determining who is a 'participant,' for purposes of standing,

the definition found in 29 U.S.C. § 1002(7) must be read in the context of traditional concepts of

standing, not in the context of adjudicating the ultimate issue of the merits of the plaintiffs'

claim....").  Accordingly, at the motion to dismiss stage, it appears that the plaintiffs have alleged

a colorable claim to vested benefits and have statutory standing under ERISA.[9]

The second issue is constitutional standing.  Defendants do not contest that two of the

three requirements for Article III standing – an "injury in fact" and a "causal connection between

the injury and the conduct complained of" – are satisfied, but assert that the plaintiffs' injuries

would not be remedied in the present suit, and therefore the requirement of "redressability" is not

---

[9] There are several standing issues unique to certain subtracks.  The defendants in three
of the subtracks – Alliance, Janus, and MFS – contend that the named plaintiffs signed general
release forms when their employment was terminated, which prevent them from bringing their
suits.  The defendants in the Bank of America subtrack allege that the plaintiff Katrina McKoy is
not and has never been enrolled in the Bank of America 401(k) Plan.  The defendants in the
Marsh & McLennan suit within the Putnam subtrack allege that the plaintiff Barbara Walsh
never held Putnam mutual funds within her retirement portfolio.  These issues may be addressed
in the opinions to be filed by Judge Davis and Judge Motz.

satisfied.  *See, e.g.*, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

The defendants argue that neither of the two operative provisions under which the plaintiffs bring this action, ERISA § 502(a)(2) and (3), would actually provide them with relief. Section 502(a)(3) authorizes a participant, beneficiary, or fiduciary to seek various forms of equitable relief to redress ERISA violations, but does not authorize compensatory damages or monetary relief.  *See Rego v. Westvaco Corp.*, 319 F.3d 140, 145 (4th Cir. 2003) (citing *Mertens v. Hewitt Assoc.*, 508 U.S. 248, 257 (1993)).  Therefore, the defendants appear to be correct that the plaintiffs cannot seek equitable relief in the form of restitution or constructive trusts directly from the breaching fiduciaries, as these would amount to monetary relief under the circumstances of this case.  *See Rego*, 319 F.3d at 145 (citing *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 214 (2002)).[10]

Section 502(a)(2) authorizes a participant, beneficiary, fiduciary, or the Secretary of Labor to bring an action against a plan fiduciary for breach of its duties under ERISA.  29 U.S.C.A. § 1132(a)(2).  The Supreme Court has stated that this provision reflects a concern with remedies that protect the entire plan, rather than with the rights of an individual beneficiary.  *See Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142-44 (1985).  In this case, the plaintiffs seek relief in the form of "a monetary payment to the Plan to make good to the Plan the

---

[10] It perhaps should be noted, however, that *Rego* involved a request for an injunction granting monetary relief on an individual claim for increased benefits.  It did not address the different question of whether a court might issue injunctive and declaratory relief under § 502(a)(3) if a participant, a plan, or a plan administrator sought a judicial decree establishing the respective rights of present and former participants to share in the proceeds of a recovery obtained on behalf of the plan in an action brought under § 502(a)(2) against fiduciaries who had breached their duties to the plan.  Likewise, *Rego* did not consider the question of whether plaintiffs may bring an action against the plan or the plan administrator under § 502(a)(1)(B) to recover the proceeds of any recovery obtained against fiduciaries in a § 502(a)(2) action.

losses to the Plan resulting from the breaches of fiduciary duties" (Am. Compl. ¶ 94), and also

seek an order that the defendants "allocate the Plan's recoveries to the accounts of all

Participants who had any portion of their account balances invested in the Strong Fund []

maintained by the Plan in proportion to the accounts' losses." (Am. Compl. "Prayer for Relief" ¶

G.)

The court need not decide at this stage of the litigation whether the second step in the

plaintiffs' proposed scheme for relief is appropriate, but rather must focus on whether the

plaintiffs presently meet the requirements for standing.  The Fourth Circuit's decision in *Smith v.*

*Sydnor*, 184 F.3d 356 (4th Cir. 1999) is instructive.  In *Smith*, the plaintiff was an employee with

the defendant company "McGraw" until December 1997 and received a lump sum cash

distribution in February 1998 from the company's 401(k) plan, representing the full value of his

account.  *Id*. at 359.  Thus, when he brought suit in April 1998 alleging breaches of fiduciary

duties by McGraw and the plan trustee Sydnor, he was a former McGraw employee who had

received his vested benefits.   Nonetheless, a unanimous three-judge panel found that Smith was

entitled to bring his suit.  *Id*. at 363.  First, the court noted that Smith brought the action on

behalf of himself, a class of employees and former employees, and "on behalf of the James

McGraw, Inc. 401(k) Plan," and that the relief sought would inure directly to the plan. *Id.*  The

court continued: "Although this remedy *will undoubtedly benefit* Smith and other participants in

the Plan, it does not solely benefit the individual participants." *Id*. (emphasis added)   Although

the court did not directly address the plaintiff's statutory standing as a former employee, nor how

exactly the relief to the plan would redress Smith's injury, the implication of the court's

unequivocal language is that plan-wide relief will benefit a former employee who no longer has

11

assets in the retirement plan.  Indeed, it is relevant to consider that it would be impossible for the plaintiffs here to receive any money to which they might be entitled without having that relief first inure to the plan.  *See Rankin*, 220 F.R.D. at 520 (holding that a named plaintiff and former employee in a class action had standing because she was seeking recovery on behalf of the plan as well as herself and that "damages will presumably flow to the Plan and in turn, to class members, including Rankin").[11]

In addition, the Third Circuit, in *In re Schering-Plough ERISA Litig.*, 420 F.3d 231 (3d Cir. 2005), specifically rejected a reading of § 502(a)(2) and *Russell* that would bar the same kind of relief sought by the plaintiffs here.  In that case, a group of former Schering-Plough employees brought an ERISA fiduciary breach suit, seeking money damages on behalf of the plan that would be allocated among the participants' individualized accounts in proportion to their losses.  Declining to apply the Fifth Circuit's majority decision in *Milofsky v. American Airlines, Inc.*, 404 F.3d 338 (5th Cir. 2005) – which the defendants cite – the court held that such relief is not barred even though it would only benefit a subset of plan participants.[12] 420 F.3d at 240.   The court went further, stating that "[t]he fact that damages paid to the Savings Plan for breaches of fiduciary duties will also indirectly benefit its participants does not bar a derivative action under §§ 1109 and 1132(a)(2)." *Id.* at 241 (citing the Fourth Circuit's opinion in *Smith*, 184 F.3d at 363).

---

[11] Significantly, the *Rankin* court then stated that "[a]ny other considerations as to the precise form of recovery to the Plan and Rankin is premature. Those issues relate to accounting and allocation, not whether Rankin has standing."  220 F.R.D. at 520.

[12] Furthermore, the Fifth Circuit has called the *Milofsky* majority decision into question by granting *en banc* review.  *See* 418 F.3d 429 (5th Cir. 2005).

Accordingly, it would not be proper at this stage of the proceedings to dismiss the complaints on the grounds that the named plaintiffs lack constitutional standing.[13]

Fiduciary Status

Under ERISA, a person or entity may become a plan fiduciary through two means. The first way is by being expressly identified in the plan documents, either by name or according to a procedure specified in the plan, as having the authority to control and manage the operation and administration of the plan. 29 U.S.C. § 1102(a)(2). Defendants contend that "most of the Defendants are not identified in the plan documents" as having the requisite authority to qualify as fiduciaries (Defs.' Mot. to Dismiss at 15), implying that they do not contest the status of those who are so identified.[14]

Second, an entity can become an ERISA fiduciary by performing specified discretionary functions with respect to the plan's management, assets, or administration of a plan in a *de facto* capacity. *Custer*, 89 F.3d at 1161. According to the statutory definition:

> a person is a fiduciary with respect to a plan to the extent (i) he exercises any
> discretionary authority or discretionary control respecting management of such plan
> or exercises any authority or control respecting management or disposition of its
> assets, (ii) he renders investment advice for a fee or other compensation, direct or

---

[13] Nonetheless, given that the plaintiffs will be granted leave to amend their complaints on other grounds, they may wish to consider such issues as: whether the present suits must include a claim for vested benefits, whether all necessary parties have been joined in these suits, and/or the potential source(s) of the court's jurisdiction to order any distribution of eventual recovery that would flow directly to the plans.

[14] It appears that from the beginning of the class period in the *Strong* suit, October 30, 1998, until December 31, 2001, SCM was in fact a named fiduciary for the Strong Plan. As of January 1, 2002, however, SCM ceded its role as Employer and Administrator to Strong Financial Corporation, which is not mentioned in the present complaint.

indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002 (21)(A); *see also Mertens v. Hewitt Assoc.*, 508 U.S. 248, 262 (1993) (noting

that ERISA defines a fiduciary in "*functional* terms of control and authority over the plan").

Plan sponsors who adopt, modify, or terminate plans ordinarily act in a settlor capacity and not

as a fiduciary. *See Lockheed Corp. v. Spink*, 517 U.S. 882, 890 (1996). It may be possible,

however, for a plan fiduciary such as an employer to wear "two hats," and, therefore, when

assessing a breach of ERISA fiduciary duty claim, "the threshold question is not whether the

actions of some person employed to provide services under a plan adversely affected a plan

beneficiary's interest, but whether that person was acting as a fiduciary (that is, was performing

a fiduciary function) when taking the action subject to complaint." *Pegram v. Herdich*, 530 U.S.

211, 226 (2000).

Thus, the dispute here largely revolves around (1) which functions and actions do or do

not give rise to *de facto* fiduciary status; and (2) whether the plaintiffs' allegations regarding

fiduciary status are sufficient. The parties adopt quite different strategies in addressing these

inquiries. Defendants argue that the discrete functions the plaintiffs invoke do not create

fiduciary status, and that the plaintiffs' broader allegations of discretionary control are

conclusory and fail to meet the appropriate pleading standard. Rather than counter each of the

defendants' arguments, plaintiffs argue that their claims should survive because (1) fiduciary

status is a highly fact-intensive inquiry, (2) the definition has been interpreted broadly by courts,

(3) they have in many cases alleged specific examples and inferences of discretionary control,

and (4) they need discovery to determine the exact nature of each defendant's role.

Further, arguing that the complaints meet Rule 8's standard, the plaintiffs cite numerous

decisions that decline to dismiss ERISA fiduciary duty claims supported by "a bare minimum of

factual allegations," or even by just a recitation of the statutory definition as quoted above.  *See*

*Concha v. London*, 62 F.3d 1493, 1502 (9th Cir. 1995); *In re Worldcom, Inc.*, 263 F. Supp. 2d

745, 759 (S.D.N.Y. 2003) ("Although the Complaint's allegations against Ebbers do little more

than track the statutory definition of fiduciary, similar allegations have been found sufficient to

satisfy the Rule 8 pleading standard."); *Howell v. Motorola, Inc.*, 337 F. Supp. 2d 1079, 1101

(N.D. Ill. 2004); *In re Elec. Data Sys. Corp. "ERISA" Litig.*, 305 F. Supp. 2d 658, 664-65 (E.D.

Tex. 2004) (noting that "courts will typically have insufficient facts at the motion to dismiss

stage from which to make the law/fact analysis necessary to determine functional or named

fiduciary status.").

Fourth Circuit law, however, requires more than the mere recitation of statutory language

in an ERISA fiduciary breach case.  The leading case is *Custer v. Sweeney*, 89 F.3d 1156 (4th

Cir. 1996).  In that case, the plaintiff Custer, a pension plan participant, alleged that Sweeney,

the plan's attorney, was an ERISA fiduciary who breached his duties.  The court held that Custer

had not adequately pled Sweeney's fiduciary status:

> While Custer's amended complaint is replete with assertions of Sweeney's
> "discretionary authority, control, and responsibility over the management of the Fund
> and certain assets of the Fund," it nevertheless lacks any specific allegations capable
> of demonstrating that Sweeney transcended his role as legal counsel. *See* 5A Charles
> A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357, 317-18 (2d
> ed.1990) (noting that court need not accept plaintiff's " 'unwarranted deductions,'
> 'footless conclusions of law,' or 'sweeping legal conclusions cast in the form of
> factual allegations' " (footnotes omitted)); *see also Randall v. United States*, 30 F.3d
> 518, 522 (4th Cir.1994), *cert. denied*, 514 U.S. 1107, 115 S.Ct. 1956, 131 L.Ed.2d
> 849 (1995).

*Id.* at 1163.  The court noted that the facts as alleged only supported conclusions that Sweeney

represented trustee subcommittees that made non-binding recommendations to the plan's board of trustees, and that he performed ministerial functions for the plan. *Id.*

In addition, defendants cite two more recent Fourth Circuit cases that adopt a stringent reading of Rule 8. *See Migdal v. Rowe Price-Fleming Int'l, Inc.*, 248 F.3d 321, 326 (4th Cir. 2001); *Bass v. E.I. Dupont De Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (cautioning that the circuit "has not...interpreted *Swierkiewicz* as removing the burden of a plaintiff to allege facts sufficient to state all the elements of her claim.") (citing cases).

Despite the cases cited by plaintiffs – which are not in the Fourth Circuit and appear to be of varying soundness – the Fourth Circuit decisions strongly support the conclusion that the plaintiffs must do more than quote the statutory language regarding "discretionary control" to plead adequately that a given defendant is a *de facto* ERISA fiduciary.  Further, allegations that a given defendant had the discretionary authority "to add and/or remove investment options," or "to hire and terminate [ ] officers and employees," are not sufficient without a proffer of some factual basis for concluding that a given entity possessed such discretionary authority.  The individual complaints must be examined to determine whether the plaintiffs have met their burden as to each defendant.  For guidance, the court will address some of the parties' disputes as to what does or does not establish fiduciary status.

As mentioned above, plan sponsorship by itself does not create fiduciary status, because it is merely a corporate or settlor function.  *See, e.g.*, *Pegram*, 530 U.S. at 225; *Lockheed*, 517 U.S. at 890; 29 C.F.R. § 2509.75-8 at D-4-5.  The parent companies of plan sponsors and administrators lack fiduciary status to the extent they do not actually exercise any control over plan assets or discretion over the plans of their subsidiaries, or exercise the power to appoint the

actual fiduciaries.  *See Gerzog v. London Fog Corp.*, 907 F. Supp. 590, 602 (E.D.N.Y. 1995).

Corporate officers and directors likewise do not become fiduciaries solely by virtue of their

corporate position, even if the corporation is a fiduciary, "unless it can be shown that they have

*individual* discretionary roles as to plan administration."  *Confer v. Custom Eng'g Co.*, 952 F.2d

34, 37 (3d Cir. 1995); *see also In re Worldcom*, 263 F. Supp. 2d at 759-61.[15]

 The defendants are correct that providing investment services to the underlying mutual

funds would not make an entity a fiduciary for any retirement plan that simply invests in those

funds.  Under ERISA, however, an entity is a fiduciary if it provides (or is authorized to provide)

investment advice "direct or indirect, with respect to any moneys or other property of such plan."

29 U.S.C. § 1002 (21)(A).  Thus, to the extent the plaintiffs allege that a given defendant had

"the discretionary authority to add and/or remove investment options under the Plan" (Am.

---

 [15] The ERISA complaints invoke *respondeat superior* as a basis for liability on the part of
certain defendants, arguing that the misconduct of their employees who were plan fiduciaries can
be imputed to them.  Except possibly under the narrow circumstances where a principal fiduciary
used an agent to perform its own specific fiduciary duties, however, this doctrine would not
ordinarily generate liability or give rise to fiduciary status.  Under the doctrine of *respondeat
superior*, a principal may be liable "for the false statement or other misconduct of the agent
acting within the scope of his authority." *Gleason v. Seaboard Air Line Ry. Co.*, 278 U.S. 349,
356 (1929).  In line with the "two hats" theory, however, an employee who performs services on
behalf of her employer's benefit plan may serve two masters: the company (as an employee), and
the plan (as a fiduciary or agent thereof).  When an employee takes actions regarding the plan, he
is not "acting within the scope of his authority" granted by the employer, but rather that granted
by the plan or plan fiduciary.  *See Taylor v. Peoples Natural Gas Co.*, 49 F.3d 982, 988-89 (3d
Cir. 1995) (finding employee was non-fiduciary agent of plan administrator though employed by
plan sponsor). Accordingly, *respondeat superior* cannot create fiduciary status on behalf of the
employer, but could only give rise to liability where the employer is otherwise a plan fiduciary
as to the functions performed by its agents. *See Crowley v. Corning, Inc.*, 234 F. Supp. 2d 222,
228 (W.D.N.Y. 2002) (dismissing *respondeat superior* claim where defendant lacked *de facto*
control of agent regarding fiduciary functions).

Compl. ¶ 20), these kinds of investment services would apply to the plan, and not to the underlying mutual funds.[16]

The defendants also are correct that the mere performance of ministerial duties on behalf of the plan does not give rise to fiduciary status. *See Beddall v. Street Bank & Trust Co.*, 137 F.3d 12, 18 (1st Cir. 1998) (noting that "the mere exercise of physical control or the performance of mechanical administrative tasks generally is insufficient to confer fiduciary status"); *see also* 29 C.F.R. § 2509.75-8 at D-2. Along these lines, the parties contest the significance of signing documents filed with the SEC. As the court stated in *In re Sprint Corp. ERISA Litig.*, 388 F. Supp. 2d 1207 (D. Kan. 2004):

> [t]hose who prepare and sign SEC filings do not become ERISA fiduciaries through those acts, and consequently, do not violate ERISA if the filings contain misrepresentations. Those who are ERISA fiduciaries, however, cannot in violation of their fiduciary obligations disseminate false information to plan participants, including false information contained in SEC filings.

*Id.* at 1226 (quoting *In re WorldCom*, 263 F. Supp. 2d at 766).

Finally, to the extent the defendants argue they cannot be deemed fiduciaries because the participants exercised control over their investments, as contemplated by § 404(c), this argument is essentially an affirmative defense not properly employed at the motion to dismiss stage. *See*, *e.g.*, *In re AEP*, 327 F. Supp. 2d at 829; *In re Enron*, 284 F. Supp. 2d at 578-79; *In re Worldcom*, 263 F. Supp. 2d at 764 n.12.[17]

---

[16] The plaintiffs still have the burden of making specific factual allegations to support the conclusion that a given defendant has such authority to add and/or remove investment options for the plan.

[17] Having discussed these specific issues, the court returns to the plaintiffs' argument that the documents they need to establish the exact nature of various defendants' fiduciary status are in the defendants' control. Defendants reply that the plaintiffs are only entitled to full discovery if the complaints are sufficient. At oral argument, counsel agreed to explore possible resolutions

Turning to the complaint in the *Strong* case, SCM, as noted above, is a named fiduciary.

Strong Financial Corporation also appears to be a named fiduciary, but is not identified in the

complaint.  As to R. Strong, despite his allegedly major role in the underlying market timing

activities, the complaint merely asserts that he "was a fiduciary of the Plan within the meaning of

ERISA in that he exercised discretionary authority with respect to management and

administration of the Plan and/or management and disposition of the Plan's assets."  (Am.

Compl. ¶ 21.)  Without more, this is not sufficient to survive a motion to dismiss.


### Imprudent Investment Claim

The core of the plaintiffs' claims for breach of fiduciary duty is that the plan fiduciaries

knew or should have known that the mutual funds, and in some instances the company stock,

were imprudent investments due to market timing and late trading, and yet they failed to act to

protect the plan participants.  Defendants argue that these claims should be dismissed as to the

---

of this impasse.  On October 5, 2005, defendants' counsel sent to the court a representative letter
received from plaintiffs' counsel.  The plaintiffs' letters apparently requested a very broad list of
documents, which they claim are "required under ERISA Section 104(b)(4) to be provided to a
plan participant upon request," to which the defendants object.

Given the holding above that the plaintiffs are "participants" under ERISA § 3(7), they
are entitled to the information described in § 104(b)(4).  This provision allows participants to
obtain the following: "a copy of the latest updated summary plan description, and the latest
annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other
instruments under which the plan is established or operated."  29 U.S.C. § 1024(b)(4).  Without
making a formal ruling on the issue in the absence of a ripe dispute, the court notes that much of
what the plaintiffs request does not clearly fall within this definition.  On the other hand, some
generosity by the defendants at this point may obviate the need for additional motions practice or
full discovery at a later time.

company stock – if not also as to the mutual funds – because the plan fiduciaries were entitled to a "presumption of prudence" in maintaining these investments.[18]

In other words, the defendants urge the court to adopt the reasoning of *Moench v. Robertson*, 62 F.3d 553 (3d Cir. 1995), in which the Third Circuit held that a fiduciary "who invests in employer stock is entitled to a presumption that it acted consistently with ERISA by virtue of that decision."  *Id.* at 568; *see also Kuper v. Iovenko*, 66 F.3d 1447,1459 (6th Cir. 1995).[19]  A plaintiff may overcome that presumption by establishing that the fiduciary abused its discretion in investing in employer securities. *Moench*, 62 F.3d at 568.  The defendants further contend that a plaintiff must plead "dire circumstances" or "impending collapse" of the company to survive a motion to dismiss in the face of the *Moench* presumption.  At least one district court in the Fourth Circuit apparently has adopted this reasoning.  *See In re Duke Energy ERISA Litig*., 281 F. Supp. 2d 786, 795 (W.D.N.C. 2003).

Assuming without deciding that the Fourth Circuit would adopt the *Moench* presumption, I nonetheless do not find it should be accompanied by a standard of "impending collapse" or similar circumstances.  *See In re Sprint*, 388 F. Supp. 2d at 1224-25 (rejecting such a standard, and noting that in *Moench*, "impending collapse" referred to the stock and not the company).  First, the ERISA statute itself provides that fiduciaries for Eligible Individual Account Plans

---

[18] Mr. Flynn does not claim to have held company stock through his retirement plan – indeed, SCM is privately held – and thus, his imprudent investment claim is based solely on the mutual funds held through the plan.  However, this opinion will discuss the defendants' argument regarding company stock, given that it is relevant to several other tracks, and because it is a predicate to the defendants' argument regarding mutual funds.

[19] In so holding, the Third Circuit actually reversed a district court's opinion granting summary judgment on behalf of the defendants.  62 F.3d at 556.

(EIAPs), and the subset thereof of Employee Stock Ownership Plans (ESOPs), are exempt from the duty of prudence only as far as it pertains to diversification, and must still act in the best interests of the plan participants in general.  29 U.S.C. § 1104(a)(2); *see, e.g.*, *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 425 (6th Cir. 2002).  Second, *Moench* and *Kuper* only addressed ESOPs, and not the larger class of EIAPs at issue here.  While the Ninth Circuit has suggested that the *Moench* presumption, to the extent it is valid, would apply to EIAPs as a whole, *see Wright v. Oregon Metallurgical Corp*., 360 F.3d 1090, 1098 n.3 (9th Cir. 2004),  it is questionable whether all EIAPs are as strongly tied to the Congressional policy of promoting employee investment as are ESOPs.  Finally, other courts have been reluctant to apply the presumption at the motion to dismiss phase, given the complexity and difficulty of balancing the competing concerns at issue.  *See Lalonde v. Textron, Inc*., 369 F.3d 1, 6 (1st Cir. 2004) (declining to adopt the proposed test,  stating that "[b]ecause the important and complex area of law implicated by plaintiffs' claims is neither mature nor uniform...we believe that we would run a very high risk of error were we to lay down a hard-and-fast rule...based only on the statute's text and history, the sparse pleadings, and the few and discordant judicial decisions discussing the issue we face"); *In re AEP*, 327 F. Supp. 2d at 829 (citing cases).

To the extent the defendants suggest that the presumption of prudence should be further extended to the plans' investments in company mutual funds, I decline to adopt an "impending collapse" standard there for similar reasons, even assuming the *Moench* presumption applies to these kinds of investments.  Accordingly, I will not grant a motion to dismiss in the *Strong* case based on a failure to plead facts sufficient to rebut that presumption.

Other Claims

As noted, the plaintiffs at oral argument indicated that they have abandoned their claims that the defendants engaged in misrepresentation and/or prohibited transactions.  Their claims for a breach of the "duty to monitor" and co-fiduciary  liability have transformed somewhat between the complaints and the briefs.[20]  The court will postpone any consideration of these claims until after any possible amendments to the complaints.[21]

Conclusion

The motions to dismiss will be granted in part and denied in part.  The named plaintiff in the *Strong* subtrack, Brian Flynn, has standing as a "participant" under ERISA § 3(7) and under Article III to bring this action.  He has not, however, adequately alleged the fiduciary status of R. Strong (or Strong Financial Corporation), and he is abandoning any claim for misrepresentation or prohibited transaction.  Flynn may seek leave to amend his complaint, consistent with this opinion, within 60 days or by another date as set by the court upon request.

---

[20] In their omnibus opposition brief, plaintiffs also raised the argument that defendants could be liable under a theory of third-party liability.  In other words, even if certain defendants are not fiduciaries, they could be liable for breaches of plan fiduciaries in which they knowingly participated.  *See LeBlanc v. Cahill*, 153 F.3d 134, 153 (4th Cir. 1998).  As the defendants properly assert, the court need not consider this claim because it does not appear anywhere in the complaints.  *See*, *e.g.*, *Freilich v. Bd. of Directors of Upper Chesapeake Health, Inc*., 142 F. Supp. 2d 679, 691 n.7 (D. Md. 2001) (court will not consider new claim raised in response to motion to dismiss in absence of amended complaint), *aff'd*, 313 F.3d 205 (4th Cir. 2002).

[21] The court will note, however, that the current complaints do not appear to state a claim for breach of the "duty to monitor" appointee-fiduciaries as recognized by the Fourth Circuit.  *See Coyne & Delany Co. v. Selman*, 98 F.3d 1457, 1465-66 & n.10 (4th Cir. 1996).  Furthermore, a claim for co-fiduciary liability obviously requires, at a bare minimum, that there be more than one defendant fiduciary in any given suit.

A separate Order follows.


    December 6, 2005                              /s/
           Date                                  Catherine C. Blake
                                            United States District Judge